IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
09/24/2010

```
                                )
IN RE                           )
                                )
LARRY G. WILKINS,               )   CASE NO. 09-32188-H3-13
                                )
          Debtor,               )
                                )
```

## MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Application for Allowance of Attorney Fees for Modification of Confirmed Chapter 13 Plan" (Docket No. 103).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment will be entered.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

Larry Glenn Wilkins ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on April 2, 2009.  William E. Heitkamp is the Chapter 13 trustee.

On the petition date, Debtor's counsel, Jesse Aguinaga, filed a disclosure of compensation.  The disclosure provided in pertinent part that Aguinaga had agreed to accept an estimated total of $4,960 for legal services, of which Debtor had paid him $2,000 prepetition.  The services contemplated in the original

disclosure included "a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy; b. Preparation and filing of any petition, schedules, statements of affairs and plan which may be required; c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof." (Docket No. 1).

The case was automatically dismissed, by order entered April 20, 2009, for failure of Debtor to file a mailing matrix. (Docket No. 12). The next day, Aguinaga filed, on Debtor's behalf, a motion to vacate the dismissal order. After an evidentiary hearing, the court vacated the dismissal order. (Docket No. 33).

On May 18, 2009, while Debtor's motion to vacate the dismissal order was pending, the Chapter 13 trustee moved to dismiss. (Docket No. 30). On June 24, 2009, Aguinaga filed, on Debtor's behalf, a response to the motion to dismiss (Docket No. 36), and a supplemental disclosure of compensation (Docket No. 35). The June 24, 2009 supplemental disclosure of compensation indicated that Debtor paid $300 directly to Aguinaga for defense of the trustee's May 18, 2009 motion to dismiss.

On August 22, 2009, Aguinaga filed, on Debtor's behalf, an objection to a $7,678.63 unsecured proof of claim. (Docket No. 56). On October 20, 2009, Aguinaga an additional

2

supplemental disclosure of compensation, indicating that Debtor paid $500 directly to Aguinaga for services rendered with respect to the claim objection.  (Docket No. 79).

On October 17, 2009, Aguinaga filed, on Debtor's behalf, Debtor's third amended plan of reorganization.  The plan called for Debtor to make four monthly payments of $4,000 each, followed by two monthly payments of $12,700 each, followed by 54 monthly payments of $12,600 each, to the Chapter 13 trustee. The plan payments, which included Debtor's $10,152.95 regular monthly mortgage payment, provided for distributions of $4,460 to Aguinaga,$53,379.27 to cure a home mortgage arrearage on Debtor's homestead, $51,624.44 to cure tax arrearages on ten non-homestead parcels of real property, and $876.12 for unsecured creditors. (Docket No. 72).  Debtor's plan was confirmed, by order entered November 12, 2009.  (Docket No. 84).

On November 15, 2009, Aguinaga filed his first fee application, seeking allowance of $7,101.25 in fees, and no expenses.  The first fee application indicated that Debtor had paid Aguinaga $2,000 prepetition, and $800 postpetition.  The time records attached to the first fee application included time during the period from April 2, 2009 through November 15, 2009. The time records reflected 24.98 hours of attorney time, billed at $285 per hour, and included, in addition to the documents required to be filed in every case and the three amendments to

3

the plan, Aguinaga's time preparing and appearing at hearings on the motion to vacate the April 20, 2009 dismissal order, the trustee's May 18, 2009 motion to dismiss, and the claim objection.  (Docket No. 86).

The court set the first fee application for an evidentiary hearing, on January 28, 2010.  At the January 28, 2010 hearing, the first fee application was granted.[1]  (Docket No. 93).

On December 21, 2009, the Chapter 13 trustee moved to dismiss, on grounds the Debtor had failed to make the payments required under the plan.  (Docket No. 90).

On January 4, 2010, Aguinaga filed an additional supplemental disclosure of compensation, indicating that Debtor paid $300 directly to Aguinaga for services rendered with respect to defense of the trustee's motion to dismiss.  (Docket No. 92). Aguinaga did not file a response to the trustee's motion to dismiss at that time.

On March 2, 2010, Aguinaga filed, on Debtor's behalf, a motion to modify the confirmed Chapter 13 plan.  (Docket No. 97). The proposed modification provided generally that Debtor would surrender the ten parcels of non-homestead real property to the secured creditors, and added a distribution of $10,472 to the

---

[1]The hearing on the first fee application was conducted by the Honorable Jeff Bohm.

4

Internal Revenue Service.

On March 2, 2010, Aguinaga filed an additional supplemental disclosure of compensation, indicating that Debtor paid $500 directly to Aguinaga for services rendered with respect to the modification.  (Docket No. 99).

On March 7, 2010, Aguinaga filed the instant fee application.  In the instant application, Aguinaga seeks allowance of $500 in fees, and no expenses, with respect to the motion to modify.  The time records attached to the instant application reflect 2.15 hours of attorney time, for services rendered from February 9, 2010 through March 7, 2010.  All services are billed at Aguinaga's hourly rate of $285 per hour. Aguinaga's time records reflect that he spent 0.05 hours in a telephone conversation with Debtor; .5 hours in a meeting with Debtor regarding the Trustee's motion to dismiss and motion to modify; .58 hours preparing the modification; .02 hours arranging a meeting for Debtor to sign the modification; .33 hours in a meeting with Debtor to review and sign the modification; .17 hours for preparation of a supplemental disclosure of compensation; .17 hours at a hearing on the Trustee's motion to dismiss; and .33 hours preparing the fee application.

On March 8, 2010, Aguinaga filed, on Debtor's behalf, a motion to sell ten parcels of real property.  (Docket No. 104). Aguinaga also filed an additional supplemental disclosure of

compensation, indicating that Debtor paid $500 directly to
Aguinaga for services rendered with respect to the motion to
sell.  (Docket No. 105).

On April 8, 2010, Aguinaga filed an additional
supplemental disclosure of compensation, indicating he received
an additional $500 for services rendered with respect to the
motion to sell.  (Docket No. 115).

On April 28, 2010, one day before the scheduled hearing
on the motion to sell, Debtor withdrew the motion to sell.
(Docket No. 120).  On April 30, 2010, Debtor withdrew the motion
to modify, (Docket No. 121), and filed a response (Docket No.
122) indicating he did not oppose the Trustee's motion to
dismiss.  The instant case was dismissed, by order entered May 6,
2010.  (Docket No. 125).

The hearing on the instant application was commenced on
August 12, 2010.  At the August 12, 2010 hearing, Aguinaga
testified regarding the contents of his contract with Debtor.
The hearing was continued to September 16, 2010, in order to
allow Aguinaga to present the contract as evidence.  At the
August 12, 2010 hearing, Aguinaga testified that he had provided
a benefit to his client in filing the March 2, 2010 motion to
modify in curing $25,000 in plan payment defaults by the Debtor,
reducing the plan payment from $12,600 to $12,275 per month, and
permitting Debtor to surrender the non-homestead real property.

6

At the September 16, 2010 hearing, Aguinaga's testimony was that the modification proposed to cure over $61,000 in defaulted plan payments.  In response to questions regarding the benefit to his client, Aguinaga asserted strategic considerations,[2] the attorney-client privilege, and directed the court to an affidavit, prepared by Aguinaga, in which his client testified that he received a benefit.[3]

Aguinaga testified that he does not maintain a trust account for client funds.  He testified that he deposited $1,800 received from Debtor into his bank account, and spent the funds without court approval.[4]  He testified that the funds he received were obtained from Debtor's postpetition earnings and thus were

---

[2]The court notes that, after the instant case was dismissed, by order entered May 6, 2010, Aguinaga filed, on Debtor's behalf, a new case under Chapter 13 of the Bankruptcy Code, in Case No. 10-36468-H3-13.  In the second case, on Debtor's behalf, Aguinaga failed to file schedules, the statement of financial affairs, Form B22C, a plan, and payment advices.  The second case was dismissed, by order entered September 23, 2010.  Nonetheless, Aguinaga filed, in the second case, a disclosure of compensation, indicating that he had agreed to file the second case for an estimated $4,960, and had received $2,526 from Debtor.  (Docket No. 1, Case No. 10-36468-H3-13).  To the extent Aguinaga may believe that filing a case without documents to obtain a short term automatic stay against the commencement of foreclosure proceedings is an appropriate strategic consideration supporting the collection of a fee, such a belief is misplaced.

[3]The court gives no weight to this affidavit, which was drafted by Aguinaga and is self-serving as to Aguinaga.

[4]This amount represents the $300 disclosed on January 4, 2010, the $500 disclosed on March 2, 2010, the $500 disclosed on March 8, 2010, and the $500 disclosed on April 8, 2010.

property of the bankruptcy estate.

Aguinaga testified that his retainer agreement with his clients provides that fees are earned by him upon tender of payment by his clients.

Aguinaga's retainer agreement with Debtor in the instant case is in evidence.  (Exhibit 1).  It provides in pertinent part:

> Client further understands that Attorney may keep
> records of time spent on Client's case and, to the
> extent that the billable time expended on Client's case
> exceeds the value of $4,960.00 with no administrative/
> court expenses, Attorney may submit said time and
> expense records to the Court for approval of payment
> through Client's Chapter 13 Plan or directly from
> Client as applicable.
>
> * * *
>
> It is agreed by Client and Attorney that all payments
> are earned on payment and are not refundable.

(Exhibit 1).

On September 15, 2010, one day before the continued hearing on the instant motion, Debtor filed an affidavit, providing in pertinent part:

> I specifically understood and acknowledged that my
> attorney would bill my [sic] on an hourly basis for my
> case in it's [sic] totality, that services above an
> [sic] beyond the hourly estimated total would be billed
> to me and that I would pay my attorney for these fees
> directly or through my plan;
>
> * * *
>
> In addition, I clearly understood and acknowledged that

8

> any legal fees paid to my attorney were earned by him
> upon payment and would not be held in trust pending my
> approval.
>
>             * * *
>
> I received tangible and actual benefits both legally
> and financially from my attorney's counsel, action, and
> representation.  I have knowingly and freely paid the
> applicable legal fees to my attorney and fully
> supported him in his efforts to represent me in the
> above referenced bankruptcy case.

(Docket No. 137).

The order dismissing the above captioned case required that applications for compensation allowable under Section 503 of the Bankruptcy Code be filed within 20 days after the date of entry of the order.  (Docket No. 125).  The court takes judicial notice that no further fee applications were filed after the instant application, and that Aguinaga has not filed a fee application with respect to the $300 disclosed on January 4, 2010, the $500 disclosed on March 8, 2010, or the $500 disclosed on April 8, 2010.

The court takes judicial notice of the "Chapter 13 Standing Trustee's Final Report and Account" (Docket No. 127), in which he indicates that $4,301.25 was paid to Debtor's counsel. Thus, Aguinaga has received $2,000 from Debtor prepetition, plus $4,301.25 from Trustee, plus $2,600 from Debtor postpetition, for a total of $8,901.25.

<u>Conclusions of Law</u>

A prospective debtor may pay a "classic retainer"

(defined as a retainer earned in its entirety by counsel upon payment, and the debtor relinquishes all interest at remittance) to an attorney prepetition.  If paid prepetition, the retainer is outside the bankruptcy estate and the purview of Section 330 of the Bankruptcy Code, though it remains subject to disclosure and reasonableness review under Section 329 of the Bankruptcy Code. Barron v. Countryman, 432 F.3d 590 (5th Cir. 2005).

After a bankruptcy petition is filed, the situation changes.  The postpetition earnings of a Chapter 13 debtor are property of the bankruptcy estate.  11 U.S.C. § 1306(a).  A Chapter 13 debtor has no authority to transfer estate property without proper notice.  Barron v. Countryman, 432 F.3d 590 (5th Cir. 2005).

After a plan is confirmed, the situation changes again. The Trustee may make distributions of property of the bankruptcy estate pursuant to the plan.  With respect to distributions to attorneys, Section 330 of the Bankruptcy Code governs allowance of attorney fees.  Bankruptcy Rule 2016(a) requires that an entity seeking compensation from a chapter 13 bankruptcy estate must file an application with the Court.  Rule 2016, Fed. R. Bankr. P.

The applicant bears the burden of proof as to the allowance of a professional fee from the assets of a bankruptcy estate.  Matter of Evangeline Refining Co., 890 F.2d 1312 (5th

10

Cir. 1989).

Under Section 330(a)(4)(B), the court may allow to counsel for an individual debtor in a Chapter 13 case "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."  11 U.S.C. § 330(a)(4)(B).

The other factors set forth in § 330 include:

> [T]he nature, the extent, and the value of such
> services, taking into account all relevant factors,
> including (A) the time spent on such services; (B) the
> rates for such services; (C) whether the services were
> necessary to the administration of, or beneficial at
> the time at which the service was rendered toward the
> completion of, a case under this title; (D) whether the
> services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and
> nature of the problem, issue or task addressed; and (E)
> whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this
> title.

11 U.S.C. § 330(a)(3).

The use of the word "including" in § 330(a)(3) indicates that the list is not exhaustive.  11 U.S.C. § 102(3). Section 330(a)(3) requires the consideration of all relevant factors.  These factors generally include:  (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly

11

litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

        In the instant case, Aguinaga has not met his burden of proof with respect to the benefit to the estate or to the debtor of the services covered by the instant application.  Although Debtor was, according to Aguinaga's testimony, either $25,000 or $61,000 in arrears on plan payments (the largest portion of which were devoted to paying Debtor's $10,152.95 regular home mortgage payments), the benefits Aguinaga identifies in the filing of the modification are to reduce the payment by $375 per month and to permit Debtor to surrender the non-homestead real properties. Aguinaga did not testify as to whether he consulted with Debtor on the question of whether Debtor would be able to make the payments called for under the proposed modification.  In response to questions regarding the benefit to his client, Aguinaga asserted the attorney-client privilege.  The court concludes that

12

the .5 hour consultation was of benefit to the Debtor.  The remainder of the services covered by the instant application were not of demonstrable benefit to Debtor.  The court concludes that a fee of $142.50 should be allowed on the instant application.

However, the evidence in the instant case has brought to light an additional issue.  In the instant case, the court has previously allowed $7,101.25 in fees.  The court has concluded that an additional $142.50 should be allowed on the instant application, for a total of $7,243.75.  Aguinaga has received $1,657.50 from his client for which there is no fee application and no order approving the fees.[5]  Aguinaga's testimony is that he has spent these funds.

Under Rule 1.14(a) of the Texas Disciplinary Rules of Professional Conduct:

> A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a trust or escrow account, maintained in the state where the lawyers office is situated, or elsewhere with the consent of the client or third person.

Tex. Disciplinary R. Prof'l Conduct 1.14(a).

Rule 1.14(c) provides in pertinent part:

---

[5]This amount represents the $8,901.25 which Aguinaga received, less the $7,101.25 allowed with respect to the previous fee application, and the $142.50 allowed with respect to the instant fee application.

> When in the course of representation a lawyer is in
> possession of funds or other property in which both the
> lawyer and another person claim interests, the property
> shall be kept separate by the lawyer until there is an
> accounting and severance of their interest.

Tex. Disciplinary R. Prof'l Conduct 1.14(c).

In the instant case, the funds paid to Aguinaga by Debtor postpetition were not a prepetition "classic retainer." The funds were property of the bankruptcy estate, until they were allowed to be paid through the plan.  When the case was dismissed, the property of the estate revested in the Debtor. 11 U.S.C. § 349(b)(3).  Therefore, Aguinaga was required to hold the postpetition funds separate from his own, until the fees were allowed.  Aguinaga has filed no fee application with respect to the funds received from his client, and the time for doing so, pursuant to the dismissal order at Docket No. 125, has passed. Those funds are property of Debtor, notwithstanding Aguinaga's prepetition retainer agreement with Debtor.  The court concludes that Aguinaga must disgorge $1,657.50 to Debtor.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas September 24, 2010.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

14